IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VANETRIS J. CARTER,<br><br>    Plaintiff,<br><br>v.<br><br>JONATHAN WALLACE, M.D., SUBURBAN SURGICAL CARE SPECIALISTS, S.C., ALEXIAN BROTHERS MEDICAL CENTER d/b/a AMITA HEALTH ALEXIAN BROTHERS MEDICAL CENTER, ELK GROVE VILLAGE, and JOHN/JANE DOES 1-3,<br><br>    Defendants. | Case No. 23 C 15730<br><br>Hon. LaShonda A. Hunt |

## MEMORANDUM OPINION AND ORDER

Plaintiff Vanetris J. Carter ("Carter") lost most of her stomach during a second surgery to repair alleged errors from the first surgery. Carter now brings this diversity medical malpractice action against Defendants Jonathan Wallace, M.D. ("Dr. Wallace"), Suburban Surgical Care Specialists, S.C. ("SSCS"), Alexian Brothers Medical Center ("Alexian Brothers"), and John/Jane Does 1-3 (the "Doe Defendants") (collectively, "Defendants"). In response, Defendants have moved to dismiss for failure to state a claim and for lack of jurisdiction. For the reasons discussed below, Defendants' motion to dismiss [24] is denied.

## BACKGROUND

I. **August 5, 2021 Surgery**

In 2021, Carter sought to address some health issues and consulted three doctors before Defendants took her under their care. On April 9, 2021, Carter visited her primary care physician complaining of extreme back pain. (Compl. ¶ 20, Dkt. 1). Her physician prescribed medication

and diagnosed Carter with arthritis and a curved spine. (*Id.* ¶ 21). Carter stopped taking the medication after eight days due to poor response. (*Id.* ¶¶ 22-23).

On June 1, 2021, Carter saw her OB/GYN. After conducting blood work and an examination, the OB/GYN reported largely unremarkable test results. (*Id.* ¶¶ 24-25). Carter's primary care physician then referred her to a gastrointestinal doctor. (*Id.* ¶ 27). The gastrointestinal doctor diagnosed Carter with a hiatal hernia that extended through her diaphragm and sat next to her heart. (*Id.* ¶ 28).

The primary care physician referred Carter to Dr. Wallace, a surgeon employed by SSCS, to repair the hernia. (*Id.* ¶¶ 3, 29). During their initial visit on June 30, 2021, Carter and Dr. Wallace discussed her diagnosis and surgical options but allegedly did not address potential complications. (*Id.* ¶ 30). Dr. Wallace referred Carter to another doctor for a pre-operative EGD Study with Esophageal Manometry, which was performed on August 4, 2021. (*Id.* ¶¶ 32-33). The following day, on August 5, 2021, Dr. Wallace performed a hernia repair surgery at Alexian Brothers. (*Id.* ¶ 34). His operative report indicated the use of an "absorbable mesh" and a loose wrap to perform a "360-degree Nissen Fundoplication" procedure, which wrapped the upper part of the stomach around the lower esophagus. (*Id.* ¶ 35). Apart from childbirth, this was Carter's first surgical procedure. (*Id.* ¶ 33).

## II.     Post-Operation Difficulties and Care

Following the surgery, Carter alleges that Dr. Wallace and three unknown medical professionals (the "Doe Defendants", together with Dr. Wallace, the "Defendant Physicians") continued to provide her medical care. (*Id.* ¶ 36). At her first follow-up appointment on August 11, 2021, the Defendant Physicians told Carter that she would need about six weeks to heal from the surgery. (*Id.* ¶ 38).

Carter did not heal within six weeks and began experiencing worrisome symptoms. On August 21, 2021, after eating pasta, she suffered a five-hour dry heaving episode that drove her to the emergency room. (*Id.* ¶¶ 43-44). Following an examination, medical providers assured Carter that her stomach was swollen from dry heaving but otherwise normal. (*Id.* ¶¶ 45-46). On September 8, 2021, Carter visited Dr. Wallace's assistant and reported symptoms of numbness, pain, fatigue, and involuntary fluids. (*Id.* ¶¶ 48-49). Dr. Wallace assured Carter that her pain was normal and would subside. (*Id.* ¶ 51).

Approximately two months after the surgery, on October 6, 2021, Carter met with Dr. Wallace for the last time. (*Id.* ¶ 53). She informed him about her stomach troubles, described her symptoms, reminded him of the emergency room visit, and requested an extension of leave under the Family and Medical Leave Act of 1993 ("FMLA"). (*Id.* ¶¶ 54-56). Dr. Wallace allegedly refused to sign Carter's FMLA extension, believing the surgery had gone well and that Carter was two weeks past the typical six-week recovery period. (*Id.* ¶¶ 55-57).

### III. November 2021 Emergency Surgery

Carter's symptoms continued. On October 24, 2021, she experienced another dry heaving episode and was taken to the emergency room; thereafter she spent four to five days in the hospital. (*Id.* ¶ 62). On November 4, 2021, Carter returned to the same emergency room after fainting from dry heaving. (*Id.* ¶ 65). "About four (4) days into her . . . stay [at the hospital] she was told they were going to open her stomach up to see what was wrong." (*Id.* ¶ 67). Carter awoke from the operation with "a deformed body, a feeding tube, and bulbs of blood coming from her chest area." (*Id.* ¶ 68). During this life-saving surgery, she lost "90% of her stomach." (*Id.* ¶ 69).

IV.     **Procedural History**

On November 7, 2023, Carter filed a four-count complaint against Defendants: negligence by failing to obtain informed consent from Carter against all Defendants (Count I); medical negligence against Dr. Wallace and the Doe Defendants (Count II); negligence and negligent supervision against SSCS and Alexian Brothers (Count III); and a derivative claim against SSCS and Alexian Brothers for the actions of Dr. Wallace and the Doe Defendants under a *respondeat superior* theory (Count IV). Carter later filed a health professional report (the "2-622 Report") to support her claims as required by 735 ILCS 5/2-622. (*See* Pl.'s Aff., Dkt. 23; 2-622 Report, Dkt. 23-2).[1] Defendants moved for dismissal of those claims as time-barred, or not supported by the 2-622 Report. (Mot. at 102-103, Dkt. 24). That motion is ripe for review.

## LEGAL STANDARD

Rule 12(b)(6) provides that a complaint may be dismissed if it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). For purposes of analyzing a motion to dismiss, facts that are well-pled must be accepted by the court as true, and all reasonable inferences must be drawn in the plaintiff's favor. *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021). However, the court need not accept legal conclusions as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). To survive a motion to dismiss, a claim must be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim

---

[1] Page numbers in citations refer to the "PageID" in the CM/ECF header, not "Page __ of __" in the CM/ECF header or any page number appearing in the footer.

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A complaint may also be dismissed if the claims alleged are time-barred by the applicable statute of limitations. *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011). Although "complaints do not have to anticipate affirmative defenses to survive a motion to dismiss . . . [an] exception occurs where . . . the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

## DISCUSSION

Defendants make two central arguments in their motion to dismiss: (1) Carter's claims in counts I through IV are barred by the applicable statute of limitations; and (2) if the claims are not barred, counts I through III should be dismissed, in part or in their entirety, because they are not supported by the 2-622 Report.

### I. Statute of Limitations

Given that all of Carter's claims sound in medical malpractice, they are subject to a two-year statute of limitations and a four-year statute of repose under Illinois law. The applicable statute provides that:

> [N]o action for damages for injury or death against any physician, dentist, registered nurse or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death.

5

735 ILCS 5/13-212(a). This is a "bifurcated provision that provides both a [two-year] statute of limitations and a [four-year] statute of repose." *Augutis v. United States*, 732 F.3d 749, 752 (7th Cir. 2013) (internal quotations omitted). In other words, a plaintiff must file their medical malpractice claims within two years from the date the claims accrue, but under no circumstances may the claims be brought more than four years after their injury occurred.

The provision also provides a discovery rule. *See generally Moon v. Rhode*, 2016 IL 119572, ¶ 24 (Ill. 2016) (applying the discovery rule located in 735 ILCS 5/13-212(a) to claims sounding in medical malpractice). The discovery rule tolls the limitations period until an injured person knows or reasonably should know of the injury and that the injury was wrongfully caused. *See id.* ¶¶ 40-43; *Hill v. Pedapati*, 326 Ill. App. 3d 58, 61 (2d Dist. 2001); 735 ILCS 5/13-212(a). Stated plainly, the statute of limitations accrues when a plaintiff becomes aware of (1) the injury and (2) that it was wrongfully caused. *Manier v. Dalpra*, No. 20 C 329, 2023 WL 5935549, at *3 (S.D. Ill. Sep. 12, 2023). Importantly, "[t]he question of when a party knew or reasonably should have known both of an injury and its wrongful cause is one of fact, unless the facts are undisputed and only one conclusion may be drawn from them." *Moon,* 2016 IL 119572 at ¶ 44.

The parties dispute when Carter's claims began to accrue. Defendants argue that all four of Carter's claims began to accrue between August 5, 2021, when Defendants performed the surgery, and October 6, 2021, her last follow-up visit with Dr. Wallace. (Mot. at 106-107). Invoking the discovery rule, Carter argues that the statute of limitations on her claims did not begin to run until November 8, 2021, when she woke up from emergency surgery and was informed by a physician that Defendants had "tied the wrap too tight around [her] stomach causing injury, damages, and killing over 90% of her stomach." (Compl. at 9-12). Taking Carter's allegations as true—as the Court must at the pleading stage—the Court finds that Carter sufficiently alleged that

her injuries were wrongfully caused by Defendants and she first became aware of this on November 8, 2021.

Carter's complaint outlines a series of assurances from Defendants that her recovery was going well. For example, on August 11, 2021—six days after her initial surgery—Carter went to her first follow-up appointment and was told it would take 6 weeks for her to heal. (Compl. ¶¶ 38-42). On September 8, 2021—about a month later—Carter described symptoms of numbness, pain, and vomiting, and was told by Dr. Wallace's assistant that those issues were "normal and would go away." (*Id.* ¶¶ 48-51). Finally, on October 6, 2021—another month later—Carter informed Dr. Wallace about her symptoms and intermittent hospitalization. (*Id.* ¶¶ 53-56). She broached the topic of an FMLA leave extension with Dr. Wallace, which he denied because "her surgery had a fast-healing [sic] time and . . . went well." (*Id.* ¶¶ 53-61). At bottom, Carter pled that Defendants repeatedly told her that her surgery went well and her symptoms were normal.

Furthermore, the complaint allegations reflect that she reasonably trusted the statements of her medical providers, including Dr. Wallace. *Cf. E.Y. v. United States*, 758 F.3d 861, 867 (7th Cir. 2014) ("Given the complexities of the human body, its injuries and illnesses, and medical treatment, and the special relationship between doctor and patient, the law should not encourage patients to assume their doctors are responsible for negative outcomes, let alone penalize patients who do not turn on their doctors at the first sign of trouble."). As such, Carter has adequately pled that she did not know her stomach condition, which led to the loss of most of her stomach, was wrongfully caused by Defendants until she was told that after the emergency surgery on November

8, 2021.[2] The Court thus finds that the two-year statute of limitations did not start ticking until that date.[3] Accordingly, Carter's complaint, which was filed on November 7, 2023, was timely.

## II. Sufficiency of the 2-622 Report

Alternatively, Defendants argue that Counts I and III and certain allegations contained within Count II should be dismissed because her claims are not supported by the 2-622 Report. Defendants' argument misunderstands the applicable law in this Circuit.

Illinois law requires a plaintiff in a medical malpractice case to attach an affidavit and physician's report certifying that the claim is meritorious. 735 ILCS 5/2-622(a). However, the Seventh Circuit instructs that a "complaint in federal court cannot properly be dismissed because it lacks an affidavit and report under § 5/2-622." *Young v. United States*, 942 F.3d 349, 351 (7th Cir. 2019). "Many cases hold that federal, not state, rules apply to procedural matters—such as what ought to be attached to pleadings—in all federal suits, whether they arise under federal or state law." *Cooke v. Jackson Nat'l Life Ins. Co.*, 919 F.3d 1024, 1027 (7th Cir. 2019) (collecting cases). This is one of those cases.

Rule 8 of the Federal Rules of Civil Procedure, not Section 5/2-622(a) of the ILCS, guides this Court in determining what a complaint must contain. As the Seventh Circuit states:

---

[2] Despite it having no weight on the Court's decision, *see infra* at 8-10., Carter's 2-622 Report backs this up. The 2-622 Report states that on November 6, 2021, Carter arrived at the emergency room with pain, nausea, and vomiting, which required emergency surgery to remove almost all of her stomach. (2-622 Report at 98). The 2-622 Report goes on to state that her operation lasted 48 hours, or until November 8, 2021. (*Id.*).

Where Carter's complaint and her 2-622 Report differ is on the exact day she arrived at the hospital for the emergency surgery in November of 2021. The complaint alleges that she arrived on November 4, 2021, (Compl. ¶ 65), and the 2-622 Report indicates that she arrived on November 6, 2021. (2-622 Report at 98). In any event, both documents imply that Carter awoke from the surgery on November 8, 2021. (*See* Compl. ¶¶ 65-67) (stating that she woke up after surgery "[a]bout four (4) days into her" stay at the hospital); (2-622 Report at 98) (stating that she awoke about 48 hours after her arrival on November 6, 2021).

[3] The Court would be remiss if it did not note that it makes this conclusion based solely off the allegations in the complaint. If discovery shows that Carter was aware that her injuries were wrongfully caused by Defendants at a prior date, Defendants may renew their statute-of-limitations argument once the record is fully developed.

> [Rule 8] does not require attachments. One can initiate a contract case in federal court without attaching the contract, an insurance case without attaching the policy, a securities case without attaching the registration statement, and a tort case without attaching an expert's report. Supporting documents come later. *Section 5/2-622 applies in federal court to the extent that it is a rule of substance; but to the extent that it is a rule of procedure it gives way to Rule 8 and other doctrines that determine how litigation proceeds in a federal tribunal.*

*Young*, 942 F.3d at 351 (emphasis added). Simply put, an absent or allegedly faulty 2-622 Report is not a basis for dismissal in federal court under Rule 12(b)(6). *See e.g., Aguilar v. Martija*, No. 22-cv-01043, 2024 WL 4202736, at *6-7 (N.D. Ill. Sep. 16, 2024) (interpreting *Young*); *Simmons v. Ill. Dep't of Corr.*, No. 18-CV-08186, 2022 WL 2463040, at *3 (N.D. Ill. July 6, 2022) ("Lack of compliance with Section 2-622 is not grounds for dismissing a complaint in federal court.").

The proper procedure for Defendants to follow here is to answer the complaint and subsequently file a motion for summary judgment challenging the sufficiency of the 2-622 Report. The Seventh Circuit observed in *Young* that summary judgment may be entered against a plaintiff that fails to fully comply with section 5/2-622's affidavit and report requirement after the pleading stage. *Young*, 942 F.3d at 351; *see also Flowers v. Wexford Health Sources, Inc.*, No. 19 CV 6423, 2024 WL 2817487, at *10 (N.D. Ill. June 3, 2024) ("In federal court, summary judgment is the deadline for complying with § 622(g)."). However, in this instance, based on Defendant's substantive arguments, Carter would be entitled to seek discovery under Rule 56(d). *Young*, 942 F.3d at 351-352 ("And just as § 5/2-622(a)(3) allows extra time if necessary to provide the reviewing physician with vital information, so Rule 56(d) allows a district court to grant extra time to the nonmovant to gather essential evidence. The state substantive goal and the federal procedural system thus can exist harmoniously."). Before Carter has had an opportunity to engage in discovery (and amend her 2-622 Report, if she so chooses), the Court would not be inclined to

proceed with summary judgment briefing. *See* Judge Hunt's Case Procedures, Summary Judgment Practice ("The Court will not consider entry of a summary judgment schedule until after the close of all discovery. Parties who wish to file dispositive motions prior to that time must first request leave of court.").

In sum, Defendants' arguments concerning the 2-622 Report are premature. Their motion to dismiss on this ground is therefore denied.

## CONCLUSION

For all the foregoing reasons, Defendants' motion to dismiss is denied. Defendants must file their answers to the complaint by 3/27/25, and the parties are ordered to file a revised agreed discovery plan by 4/10/25.

**DATED**: March 6, 2025                               **ENTERED**:

LaShonda A. Hunt
United States District Judge